**In re BBS NORWALK ONE, INC., Debtor.**

**Bankruptcy No. 98–51068.**

United States Bankruptcy Court, D. Connecticut.

Feb. 1, 1999.

James Berman, Zeisler & Zeisler, Bridgeport, Connecticut, for BBS Norwalk One, Inc.

Peter D. Morgenstern, Bragar, Wexler, Eagel & Morgenstern, New York City, for the Official Committee of Unsecured Creditors.

Leo Fox, New York City, for Virginio Battanta.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Chief Judge.

The debtor and Virginio Battanta have filed competing plans of reorganization. The narrow issue addressed here is whether a minority shareholder of a debtor in possession has the authority under applicable state and bankruptcy law to file a plan of reorganization that proposes to mortgage the debtor's property to fund the plan.

## BACKGROUND

The debtor is incorporated in Delaware. Its shareholders are John Steele and B & B Properties, Inc., who hold a 10% and 90% interest respectively. The ownership of B & B Properties is currently being litigated in a New York state court. In that litigation, Virginio Battanta asserts a 100% interest, and Hugo Bunzl asserts a 50% interest. For the purposes of this proceeding, the parties agree that Battanta is at least a 50% shareholder of B & B Properties. Battanta, Bunzl, and Steele comprise the debtor's board of directors. The debtor's sole asset is a commercial property located in Norwalk, Connecticut.

On September 26, 1991, Battanta, Bunzl, and Steele executed a shareholders' agreement ("Agreement"), which by its terms, is governed by New York law.[1] The Agreement provides that a shareholder, who wants "to sell to any third party 5 or more ... of the Shares held by such Sharehold-

---

1. The parties agree that New York law governs this determination. However, even if it were argued that Delaware law controls based on the debtor's incorporation, the parties agree that the governing statutes of New York and Delaware are substantially the same.

er", must give written notice to the non-selling shareholders. *Shareholders' Agreement,* at 6. The notice operates as an offer to the non-selling shareholders to purchase the shares at the same price and terms as the offer to the proposed purchaser. The non-selling shareholders then have 30 days to accept the offer.

On June 5, 1998, the debtor filed this Chapter 11 case. The debtor and the Official Committee of Unsecured Creditors filed a liquidating plan on November 2, 1998. Battanta filed a competing plan on November 30, 1998. Battanta's plan proposes to refinance the debtor's property. Both plans propose to pay creditors in full.

## DISCUSSION

■ Under the Business Corporation Law of New York, the disposition of substantially all of a corporation's assets out of the regular course of business is authorized only if there is board approval and approval by shareholders holding at least two-thirds of the shares entitled to vote. N.Y.Bus.Corp.Law § 909 (McKinney 1997). Additionally, New York law authorizes the board of directors to mortgage corporate assets without shareholder consent. N.Y.Bus.Corp.Law § 911. There is no statutory authority, however, for minority shareholders or directors to mortgage corporate property.

Battanta's plan provides that upon confirmation, he will become the majority shareholder and the holder of another director's position. His plan is premised upon the contention that Steele's authorization for the filing of this case and his support of the debtor's liquidation plan in effect stated his intentions to "sell his 10%

shareholder interest (and his seat as director on the Board)." *Memorandum of Law in Support of Virginio Battanta's Disclosure Statement and Plan of Reorganization,* at 6. As a consequence, Battanta claims a right of first refusal under the Agreement which permits him to purchase Steele's 10% interest.[2] Battanta's right to Steele's position on the board of directors is not explained, nor has he provided any authority to support his right to become a majority shareholder and director.

■ New York law does not support Battanta's argument.[3] First, it is observed that a right of first refusal does not:

> give its holder the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer property first to the party holding the preemptive right so that he may meet a third-party offer. . . .

*Metropolitan Transp. Auth. v. Bruken Realty Corp.,* 67 N.Y.2d 156, 163, 501 N.Y.S.2d 306, 492 N.E.2d 379 (1986).

■ More to the point, New York courts hold that a liquidation, in or out of bankruptcy, is not the equivalent of a shareholder's offer to sell shares to a third-party. In *Sands Point Land Co. v. Rossmoore,* 43 Misc.2d 368, 251 N.Y.S.2d 197 (N.Y.Sup.Ct.1964), the board of directors proposed to dissolve the corporation and liquidate the company's assets. The board's proposal was approved by the requisite vote of the shareholders. *Id.* at 199. An individual shareholder objected to the dissolution and liquidation and requested fair value for his shares from the

---

**2.** Even assuming that this argument has merit, Bunzl would have the same right.

**3.** Battanta does not cite any authority for his position and his reliance on the cases he does cite is misplaced. In *In re River Bend–Oxford Associates, Inc.,* 114 B.R. 111 (Bankr.D.Md. 1990), the only issue addressed by the court was whether second-tier equity owners (as here) were parties in interest entitled to file a plan. The court held that they did, which is

of little consequence in this case as Battanta's right to file his plan has not been challenged. Battanta also relies on *In re Stolrow's Inc.,* 84 B.R. 167 (9th Cir. BAP 1988), which dealt with a shareholder's objection to confirmation of a plan that excluded him from the opportunity to purchase the corporate-debtor's assets. Neither a right of first refusal nor a sale of shares was at issue in that case.

corporation. The corporation cited a provision in its charter which required shareholders who wished to sell their shares to first offer them to the corporation for par value and rejected the request on the basis that the shareholder decision to dissolve and liquidate the company's assets is equivalent to shareholders offering to sell their shares. *Id.* at 200–01. The court held that the shareholder had not offered to sell his shares, the liquidation did not compel the shareholder to sell the shares, and the charter provision governing the sale or transfer of shares was therefore not effectuated. *Id.* at 201. Further, the shares of all the shareholders were canceled because of the liquidation and dissolution. The court stated "[i]t is well settled that restrictions on the sale or transfer of corporate stock ... apply only to voluntary sales." *Id.* at 200. *See also LIN Broadcasting Corp. v. Metromedia, Inc.,* 74 N.Y.2d 54, 60, 544 N.Y.S.2d 316, 542 N.E.2d 629 (1989) (noting that right of first refusal "contemplates a willing seller" and merely gives other party a chance to buy before owner sells); *In re Pace Photographers, Ltd.,* 71 N.Y.2d 737, 747–48, 530 N.Y.S.2d 67, 525 N.E.2d 713 (1988).

Here, the corporation voted to file for bankruptcy relief. If that relief comes in the form of liquidation, as proposed in the debtor's plan, Steele is not voluntarily offering to sell his shares to a third-party. Rather, the liquidation of the corporation would cancel the shares and the right of first refusal contained in the Agreement would not be implicated. Moreover,

---

**4.** In *Sands Point,* the court noted that provisions, which restrict the sale of shares by providing for a right of first refusal, did not apply to the transfer of shares by judicial sale or operation of law unless such provisions expressly included those transfers. *Sands Point Land Co. v. Rossmoore,* 251 N.Y.S.2d at 201. That view of New York law comports with *Doniger,* where the court recognized that a shareholders' agreement should be interpreted so that it would not "exclude any possible method whereby their ownership interests would be affected, including a proceeding

Steele's mere support of a liquidating plan, which may or may not be confirmed, does not constitute an offer to sell his shares.

A different outcome might result if the Agreement contained express language that a dissolution or liquidation would invoke the right of first refusal. *See Doniger v. Rye Psychiatric Hospital Center,* 122 A.D.2d 873, 505 N.Y.S.2d 920, 923 (2nd Dept.1986).[4] Here, however, the Agreement only triggers a right of first refusal for the purchase of shares when a shareholder offers to sell to a third-party, *see supra* at 441.

### ORDER

Accordingly, IT IS ORDERED that Battanta's plan is not confirmed.

---

for judicial dissolution" when there was specific language to support that result. *Doniger v. Rye Psychiatric Hospital Center,* 505 N.Y.S.2d at 923. An example of the broad language in the *Doniger* provision follows:

An offer shall be made ... [i]n case of the passage or disposition of shares in any voluntary or involuntary manner whatsoever, including but not limited to passage or disposition ... under judicial order, legal process....

*Id.* Compare to the language of the debtor's provision, *see supra* at 441.